The next case today is Anthony M. Shea v. United States, Appeal No. 171899. Good morning, Counselor. Could you identify yourself for the record? Good morning, Your Honors. It's Wade Zielinski on behalf of Mr. Anthony Shea. Thank you. Are you ready to proceed? I am. You may. Good morning, and may I please the Court? May I reserve one minute for rebuttal? Yes, you may. Mr. Shea's case presents two issues for this Court to consider. First, whether the Mandatory Career Offender Guideline fixed sentences so that the Career Offender Residual Clause is unconstitutionally vague as an application of Johnson 2. And then if this Court were to reach it, whether attempted armed bank robbery includes the use, attempted use, or threatened use of violent physical force as an element. I will begin with the Mandatory Career Offender Guideline argument. The rule from Johnson 2 is fairly straightforward. It is that a sentencing provision that fixes sentences by way of double indeterminacy is unconstitutionally vague. Mr. Shea argues that same rule here and says it applies to the Mandatory Career Offender Guideline. Excuse me, counsel. Is it correct that nine other circuits have already considered essentially the same argument? Is that correct? That is correct. And eight of them have ruled against your position? That's correct. On the ground that Johnson 2 was applicable to statutes, and this is not a statute but a guideline? Variously, yes. Okay, just refreshing my recollection. But why, I don't understand how Johnson 2 governs this case when there is such a material difference between the way a guideline, even a mandatory guideline, operates and the way a statute operates. Judge Telia, I think that I just disagree that there is a material difference between the way, say, the ACCA fixed a sentence and the way that the mandatory guideline fixed a sentence. The court in Booker made very clear that those mandatory guidelines were not recommendations to the sentencing court. The sentencing court had to fix its sentence within that range. The government agrees that district court judges had to fix that sentence within that range. This court, or at least a panel of this court in Moore, essentially said the word fixed is not a term of art. And when the Supreme Court has told you that you are mandated to fall within a particular range, that would mean fixed. To the extent that the distinction that the government is trying to draw between a statute and a guideline is significant, that a very similar, or if not the exact same, argument was made and rejected by the Supreme Court in Booker. The Booker court just said, in our judgment, the fact that the guidelines were promulgated by the sentencing commission rather than Congress lacks any constitutional significance. And the reason why they said it lacked constitutional significance is because, regardless of whether it's being done by a statute or a mandatory curriculum or guideline, it is changing the sentencing options available to the court. It is changing the sentencing range. And in fact, Booker itself started back with Apprendi. And Apprendi was applying that rule to a statute. And when we got to Booker, they applied that same rule to a guideline. Maybe it would help if you just addressed the way in which we know the sentence is not fixed if it's a non-mandatory guideline, even though it's sentencing error to misapply and miscalculate the guidelines. Why is it fixed under the mandatory guidelines? In other words, the mandatory guidelines, unlike a statute, does not tell you definitively what the ultimate sentence will be, because there is some room around it that the district court had, even under the mandatory guidelines scheme. But yet you want us to treat fixed as if it applies equally to mandatory guidelines as it would to a statute. So just what's the argument as to why it makes sense to treat fixed as we used it in Moore in describing the Johnson rule, fixing the sentence as encapsulating what happens under the mandatory guideline regime? I'm not sure. Five minutes remaining. I understand the court's question, but I'm going to give it a shot. The reason why it fixes is because it alters the sentencing range that is available to the court. And the Supreme Court at a lane had said changing a mandatory minimum. That could be true under the Beckles regime also, under the non-mandatory regime. A guideline error can change the range. So I think what you need to show is something about the way the mandatory guidelines operated, is not just that it affected the calculation under the guidelines, but that the consequence of a calculation under the mandatory regime is fairly described as fixing the sentence, even if the calculation under the non-mandatory regime is not fairly characterized as fixing the sentence. Well, I don't think the non-mandatory regime fixed sentences and the Supreme Court said so. Right. Does the mandatory regime fix them? It can't just be because it sets a range. The guideline calculation sets a range. It sets a range under the non-mandatory regime also. What about the mandatory regime makes it fair to say it's fixed in the way that a statute fixes the sentence? It's fixed in a different way because the district court is bound to sentence within that range that has been changed. Where in the regime where the guidelines were not mandatory, the district court does not have to. So, for instance... I'm really asking, what discretion did the district court have under the mandatory regime to vary from the guidelines range? None? Some? Less than they have under a statutory mandatory sentence? More? Less? Are you speaking about upward and downward departures? You tell me, but I think what I'm just trying to figure out is to the extent that the district court has no discretion to deviate from the range, it makes very much sense to say it was fixed. We know in the non-mandatory regime that's not the case. They can vary a lot, so it's not fixed. How fixed is the mandatory regime in your view? Perfectly fixed? What do we do about downward departures and upward departures? How much discretion was there nonetheless as a residuum under that regime, etc.? I think that it is fair to describe the mandatory guidelines as fixed. But we also need to understand that there was a possibility to upwardly depart and downwardly depart. But the district court judge's ability to do those upward and downward departures were restrained by the guidelines themselves. So it's not as though the court could just disregard the guideline entirely. It had to have a specific basis, and it had to be tied and given permission by the guidelines themselves. At the upward and downward departure provisions, we have a fair amount of room for the district, for the sentencing court to exercise discretion and to do fact finding. There's no magic formula, for example, to determine whether a defendant has given sufficient assistance to the government to warrant a downward departure for substantial assistance. That's left to the district court's judgment and the district court's discretion. And that's true of virtually every other type of departure, or at least many of the departures. The fact that there is some discretion for the court to, say, find facts, if you will, about whether there was substantial assistance or not, cannot be deforced from the fact that the mere presence of the downward departure was provided for by the guideline scheme. Without the guideline scheme, the district court would not have the ability to upwardly depart or downwardly depart. Whereas, may I continue? Yeah, you may answer the question. Whereas the guidelines, when they were after Booker, the district court had wide-ranging ability to upward or downwardly depart, because the guidelines were not mandatory, they were advisory. And to answer the question in how it applied to how it fixed Mr. Shea's sentence, is that his mandatory sentence, his mandatory minimum sentence for, say, his non-924C counts, went from zero under the statute to 262 months under the guidelines. And there were no downward departures in the record available to Mr. Shea. Thank you, Counselor. Dan? Yes, sorry. At this time, Ms. Zielinski, you should mute and unmute your microphone. Thank you. Should I begin? Sorry, excuse me. Wait a minute. Okay, thank you, Judge. Are we ready, Dan? Yes, Judge, I'm sorry. I must have muted. We're ready to go. Okay. All right. Could you state your name for the record, Counselor? Yes, Your Honor. Seth A. Frame for the United States. And are you ready to proceed? I am. Thank you. So let me begin on the mandatory guideline issue by focusing on what I think the question is, which goes to Judge Selye's first question. He pointed out eight of nine circuits have ruled on the statute of limitation question that a mandatory guideline claim is untimely. That's not just important because we want to follow other circuits. That's important because what we're doing here, I think, is an analysis under Teague to see whether reasonable jurists can all agree that Johnson extends to cover the mandatory guideline situation. If all reasonable jurors don't agree that that's the rule, then what F3 requires is waiting for the Supreme Court to make that decision. How would this ever reach the Supreme Court if we don't reach it? If the circuit court is not willing to say it's timely, how is this ever going to reach the Supreme Court? Well, these have gone up to the Supreme Court. Cert has been denied in a case called Brown. Justice Sotomayor wrote a dissent from the grant of certiorari joined by Justice Ginsburg. She lays out why this is an important case to take and which the Supreme Court can take that next step. I think, Mr. Refrain, you said from the grant of certiorari. I think you meant from the denial. You are correct, from the denial of certiorari. She sets out why she would have granted, excuse me, and she's saying that three courts of appeals have decided it's untimely. This is an important question, and the Supreme Court should take it up for that reason, and they didn't. But that tells me that even Justice Sotomayor thinks there's another legal step that has to be taken, and what's important about F3 is it says the Supreme Court has to take that step. That's important in the construct of AEDPA, because as you get away from a case becoming final, I think the goal of AEDPA is for there not to be legal innovation done by lower courts in cases that are far removed from judgment. So by requiring the Supreme Court to have announced the rule or the right, you are stopping lower courts from doing that kind of innovation. Okay, but the issue still is the court announced the rule in Johnson. In Moore, we describe that rule as a rule that applies when the legal provision that's claimed to be vague fixes the sentence. So either that applies here or it doesn't. So you made that decision under H2. There's plenty of discussion in Moore about the tentative nature of an H2 decision. That's a question of whether an X thing fixes the sentence. There's nothing tentative about our description of the Johnson rule as a rule that applies when the standard is one by which courts must fix criminal sentences. So the question that we now confront, that we did not confront in Moore, is not as a prima facie case matter, does a mandatory guidelines provision fix the sentence? But I actually think it's a key question of whether all reasonable jurists agree on that point. You said in Moore, and I'll take it, Moore says it fixes sentences. That was the panel's view. I'm not here to disagree that that's wrong. What I'm saying to you, Judge Barron, is that's debatable. That's not accounting. Okay, fine. But just because we got late to the party doesn't mean we're bound now to say it must be debatable, just because eight courts came before us. It's not like the last circuit ends bound by the first eight circuits. So the question still is, why is it debatable as a substantive matter? Just to say that a mandatory guidelines provision does not fix the sentence. It's debatable as to whether it fixes the sentence. Why it's debatable is that the Supreme Court in Johnson is dealing with a rule that sets statutory minima and maxima, and it uses the word fixed sentence to describe that scenario that it faces. It then takes on an advisory guideline regime and says that doesn't fix sentences. The judges have discretion and the statute is still within the mandatory minimum and maximum that's set by the statute. Mandatory guidelines are coming in between. But it's not advisory. This was when it was mandatory. I understand that. To enhance the range. Well, it does not enhance the statutory range. You are still subject to a sentence of between zero and 20 years. What mandatory guidelines do is say where within that statutory range must you be sentenced within some number of months with the possibility of departures. That's what mandatory guidelines do. I'm not saying... But they said if the judge thought that you should get probation and the range called for a minimum of five years, that was not possible under that old regime. Well, it's not... If the statutory range starts at five years, it's not possible under the current regime either. It's only possible... I said the range started at zero to life. Let's just go with that. Okay. If the range goes from zero to life, the mandatory guidelines directed the judge to where within that zero to life range you should sentence them. And the question is, when Johnson said fixed sentences, does it mean that? Now, in Johnson, it's talking about a statute that's going to increase the statutory minimum from zero to 15. Let me ask it this way. Put aside for the second departures under the mandatory regime. So imagine we have a mandatory regime in which there's no departures. Okay. So what it does is it sets a range. And that's a mandatory range, but it's a range. So you can be within the range, but you cannot deviate from the range. If that's how the mandatory guidelines regime worked, would Johnson control? Probably, but not necessarily. Not necessarily. Because that... I don't know what that means. You have an answer, you have to know on that one. Johnson is about the statutory minimum and maximum. The whole point of the guideline range is it exists within the statutory regime that exists for each crime. One possibility is you would like us to conclude that the whole thing is a formal distinction between whether it's a guideline or a statute that sets it, independent of how binding the guideline is. That's one possible argument. If we rejected that argument, do you have another argument as to why Johnson is not controlling in the mandatory regime? Well, I mean, we have the departure argument, but you told me to forget about that. No, now I'm telling you to remember it. Okay. So now if we bring back in departures, why is it that if I disagreed with your contention that the fact that this is a guideline rather than a statute in and of itself means Johnson doesn't apply? Why is it that the fact that there are departures allowed in the guidelines regime that was mandatory makes it so it's not a fixed sentence in the government's view, given that there were limits on when you could depart? Well, again, I'm not here, Judge Barron, to say definitively what the right answer is. What I'm saying is there's an argument to say that because the judge has some room to say this case is not within the heartland for the following reasons, I'm going to give a different sentence. That could be the kind of discretion that Beckles is talking about. And how should we think about a case in which there's no claim of a departure being applicable? So what you said and more is that perhaps it requires a case-by-case analysis. If it does, is it debatable here? In other words, there is no claim of a departure. So in this case, the guideline would set the range. And does that mean your only argument then is, well, because it's a guideline, not a statute, there's a debatable point? I suppose what it means is that there was no departure. I mean, the defendant may not have raised the argument. The court may not have granted one. It doesn't mean that there wasn't an argument that could have been made. We don't know how the court would have resolved it. Yes, this person didn't get a departure, and he may not have moved for one. But that doesn't mean that those arguments weren't available. Litigants don't make arguments all the time that they could have made. So I don't know how you figure that out, actually. So does that mean we should not look at case-by-case? You know, I don't think this case requires you to reach that. But I'm not sure I understand how that would play out in practice. Well, did probation use to identify when a possible departure could be made? I mean, it is a little paragraph in the PSR where probation says they think. But just because they think or don't think, a lawyer for the defendant can certainly make an argument for departure. That happens all the time. And the judge, or a variant, now, but then a departure. The judge may grant it, may not. So, you know, there was some discretion. Now, you can still say, it might be correct to say, that's not enough discretion to take it out of fixed. But my point is, these are all hard questions. And, I mean, I know Judge Barron, you said, well, we're late to the party. Does that mean we lose our ability to decide? But T talks about that if it's in dispute, that's the significant question under F3. I do want to come back to that. And that's why Justice Sotomayor is trying to get the Supreme Court to take it. Because F3 puts the onus on the Supreme Court to resolve the discussion that we are having, which is a hard one. I'm not here to say Moore is wrong. Moore very well may be right. But it's not 100% sure that Moore is right. Moore didn't have to decide it was 100% sure that it's right. And I think all the other law from both the Supreme Court certiorari denial and the other circuits is important if you're actually doing a Teague analysis. Those are the materials you look at to decide whether reasonable jurists can disagree. And what you said in Moore was, well, the 11th Circuit disagrees. But that's one court. But now it's eight courts. That does matter. That's time. I think Judge Selly had a question, though. No, I'm satisfied, Judge. Can I say one thing on the other issue, Judge Thompson, before I stop? 30 seconds. Thank you. I do think the attempt issue is hard, not on timeliness. I agree. After studying for this oral argument, while I still think the government's position is right, I would not have an objection to a remand on the attempt issue to allow more litigation and more development of the legal record so that it would come back more fully developed. Because I'm only asserting that as an alternative basis for affirmance. But I would be content to litigate that first in the district court and then here. Thank you. Attorney Aframe, if you would mute your audio and video. And Attorney Zielinski, if you'd return for one minute of rebuttal. Good morning, Your Honors. I'm going to pick up with the government's position that this court must wait for the Supreme Court to make this decision. That just cannot be true. And I will give the court the example of Stringer v. Black, which is using a Teague analysis about what a new rule is or is not. And they reversed the Fifth Circuit in that case for not applying the rule from Godfrey to Mississippi's death penalty statute, despite differences in the statute and despite some differences in its application. The government relies very heavily upon this reasonable jurist standard. The Supreme Court has said that just because there's disagreement does not mean that there is a new rule. And if you look at Wright v. West, they explain very clearly what this reasonable jurist standard is. It says, under the reasonable jurist standard, when the distinction under consideration does not change the force with which the underlying rule applies, then the distinction is not meaningful and any deviation from the precedent is not reasonable. The distinction that the government is trying to draw here about how tightly the shoe fits with Johnson too, those distinctions are not meaningful in the mandatory career offender guideline regime. And so it is not reasonable. Those other nine circuits that have seemed to have ignored Booker and its mandate that the guidelines were mandatory at the time, under Wright v. West, it would not be reasonable. And I'll finish with saying, with regards to departures, Booker itself analyzed departures and since we said we understand there are departures here, we also understand that those departures are very strictly limited and mostly not available. So that is the tiny little room in which the government is moving. The point you're making, if I get it, I think you're saying to us that we're supposed to think about the question with respect to the nature of the constitutional claim that's at issue, so if it's a vagueness claim, the right way to think about it is, does the discretion that might inherit even in a mandatory regime have anything to do with the concerns about the vagueness of the provision? If they don't, then they really shouldn't figure into the analysis. Whereas in the non-mandatory regime, the vagueness of the provision really was implicated or affected by the fact that it was an advisory range because it was just guidance, so how could it have affected it? That's the basic point. That's exactly right. Thank you. Thank you, Counselor. You're welcome. That concludes the argument in this case.